IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| BARBARA N.,[1] | Case No. 2:24-cv-01633-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Barbara N. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the decision of the Commissioner is REVERSED and REMANDED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

BACKGROUND

I.  **Plaintiff's Application**

Plaintiff alleges disability based on stage three cervical cancer. Tr. 65, 73.[2] At the time of her alleged onset date, she was 53 years old. *Id.* She has a high school education. Tr. 25, 283-84. She has past relevant work as a management trainee, stock clerk, and cashier checker. Tr. 25.

Plaintiff protectively applied for DIB and SSI on April 19, 2021, alleging an onset date of March 10, 2021. Tr. 65, 73. Her applications were denied initially on July 1, 2021, and on reconsideration on June 27, 2022. Tr. 70, 78, 87, 95. Plaintiff subsequently requested a hearing, which was held on October 25, 2023, before Administrative Law Judge ("ALJ") Marie Palachuk. Tr. 36-63. Plaintiff appeared and testified at the hearing, represented by counsel. *Id.* Tr. 27. On November 21, 2023, the ALJ issued a partially favorable decision in Plaintiff's favor, finding that Plaintiff was not disabled before January 2, 2023, but became disabled on that date and through the date of the decision. Tr. 25-27. Plaintiff requested Appeals Council review, which was denied on July 29, 2024. Tr. 1-6. Plaintiff then sought review before this Court.[3]

II.  **Sequential Disability Process**

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "Tr." are to the Administrative Record. ECF 9.

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 4).

PAGE 3 – OPINION AND ORDER

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.  The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 17-18.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "cervical cancer, mild degenerative disc disease, and anxiety[.]" Tr. 18.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. The ALJ then assessed Plaintiff's residual functional capacity ("RFC") from March 10, 2021, to January 2, 2023. Tr. 21. The ALJ found that during this time frame, Plaintiff had the RFC to do light work with the following limitations:

> Postural activities can be performed occasionally. [Plaintiff] should never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to extreme temperatures and respiratory irritants. [Plaintiff] should have occasional interactions with the public and coworkers.

*Id.*

At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 25.

But at step five— before January 2, 2023— considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a marker, routing clerk, and housekeeping cleaner. Tr. 26. Beginning on January 2, 2023, the ALJ determined that there are no jobs that exist in significant number in the national economy that Plaintiff could perform. Tr. 26-27. The ALJ explained that on January 2, 2023, Plaintiff's age category changed, and she was disabled as of that date. *Id.*

PAGE 5 – OPINION AND ORDER

Thus, the ALJ concluded that Plaintiff was not disabled before January 2, 2023, but she became disabled on that date and continued to be disabled through the date of the ALJ's decision. Tr. 27.

## DISCUSSION

Plaintiff argues the ALJ committed two errors: (1) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and (2) improperly rejecting the medical opinion provided by Dr. Susan Rice, M.D. Pl.'s Opening Br. 2-11.

**I.    Subjective Symptom Testimony**

the ALJ provided two clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony regarding her physical impairments. However, regarding her mental impairments, the ALJ erred by rejecting Plaintiff's subjective symptom testimony solely on the basis of a lack of corroborating objective medical evidence. Therefore, the ALJ's reasoning is inadequate as to Plaintiff's mental impairments, and the matter must be remanded for reconsideration of Plaintiff's testimony regarding her mental impairments.

**A.    Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

PAGE 6 – OPINION AND ORDER

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

**B.      Plaintiff's Testimony**

At the hearing, Plaintiff testified that she suffered from multiple physical and mental ailments. Regarding her physical impairments, Plaintiff testified that she suffers from lower back pain and chronic constipation Tr. 51. She testified that she can only stand up for ten minutes before needing to sit down, and that she cannot lift more than ten pounds. Tr. 51-52. Plaintiff explained that her constipation continued after she stopped taking opiates, and there are times where she cannot go to the bathroom for almost a week. Tr. 52. Plaintiff testified that her pain affects her ability to focus and concentrate. Tr. 53.

PAGE 7 – OPINION AND ORDER

Regarding her mental health symptoms, Plaintiff testified that she was dealing with memory loss, depression, and anxiety when she was diagnosed with stage three cancer, and continued to have symptoms after her cancer went into remission. Tr. 51, 54. She explained that she forgets about medical appointments, does not want to go to her medical appointments, and experiences lapses in memory where she forgets what she is doing. Tr. 54. She testified that she experiences high levels of anxiety when she is in public. *Id.*

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Specifically, the ALJ discussed Plaintiff's activities of daily living, treatment history, and the objective medical evidence. Tr. 21-23. This Court addresses each rationale in turn.

### C.     Activities of Daily Living

The ALJ discounted Plaintiff's subjective symptom testimony regarding her physical impairments because it was inconsistent with her reported daily activities. Tr. 23.

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. § 404.1529(c)(3)(i). The Ninth Circuit has found such routine activities as playing video games, using public transportation, and preparing meals can undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive

disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility). To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

      The ALJ reasonably found several of Plaintiff's reported daily activities "do not suggest that she requires more than a light exertional limitation." Tr. 23. Although Plaintiff alleged that her back pain is distracting and has made her unable to work, Tr. 53, the ALJ noted that she still partakes in activities "such as picking huckleberries, mushrooming, camping, fishing[,] and baking[,]" but acknowledged that her back pain has affected her ability to do these activities. Tr. 23 (citing Tr. 753, 1002). The ALJ accurately described these activities, as the record indicates that in October 2022, Plaintiff reported "she did some walking in the mountains for mushrooms yesterday and that went okay" but then in August 2023, Plaintiff explained to Dr. Rice that her back pain "limits her ability to do activities she enjoys such as picking huckleberries and mushrooming." Tr. 819, 1002. The ALJ also discussed that in August 2022, despite Plaintiff's allegations that she cannot lift more than ten pounds, Tr. 52, Plaintiff was able to lift and pack boxes during a move, but experienced pain the following day. Tr. 23 (citing Tr. 808). Lastly, the ALJ explained that Plaintiff prepares her own meals, crochets, partakes in everyday chores, and goes shopping twice a month for two hours. *Id.* (citing Tr. 297-99.) Another treatment note from August 2022, indicates that Plaintiff reported she was taking care of a two-year old child, although the record is unclear as to what this entailed, and how often she was taking care of the

child. [4] Tr. 811. Because the ALJ reasonably cited several activities that conflict with Plaintiff's allegations about the limitations physical health symptoms cause, this was a clear and convincing reason for the ALJ to rely upon to discount her testimony regarding her physical impairments.

### C.   Treatment History

The ALJ also rejected Plaintiff's subjective symptom testimony regarding her physical impairments due to her non-compliance with treatment. Tr. 22.

An ALJ may rely on a claimant's non-compliance with treatment to discount her testimony regarding the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ explained that physical therapy was recommended to Plaintiff, but she did not follow through with in-person treatment or with her home treatment plan, despite her symptoms improving with physical therapy treatment. Tr. 22 (citing Tr. 806, 826, 1002). The ALJ also mentioned that Plaintiff did not attend the aquatic program that was recommended for her twice per week. *Id.* (citing Tr. 807).

Plaintiff argues that she stopped physical therapy because it did not help with her pain. Pl.'s Opening Br. 7. If a claimant offers evidence of a good reason for non-compliance with treatment, then the non-compliance is not a clear and convincing reason to reject her testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, Plaintiff's argument misses the mark. The ALJ cited multiple treatment notes where Plaintiff reported physical therapy helped alleviate her pain, and the record indicates she stopped going to her appointments for other

---

[4] The Court acknowledges that Plaintiff eventually stopped taking care of her granddaughter. A treatment note from March 2022 shows that Plaintiff reported she used to be a foster parent to her grandchildren "for a little while-until she was diagnosed with cancer." Tr. 757. She explained that "the children are with a different foster parent now[,] but she sees them regularly and is friends with the foster mom." *Id.* Nevertheless, Plaintiff did take care of children in some capacity during the relevant period, which is inconsistent with her subjective symptom testimony regarding the disabling nature of her impairments.

PAGE 10 – OPINION AND ORDER

reasons. Tr. 18, 22 (citing Tr. 806, 821, 826, 1002). Specifically, Plaintiff reported she stopped physical therapy because she was "too busy with her life to come[,]" not because therapy was unhelpful. Tr. 800. A treatment note from August 2022, indicates that Plaintiff had only been able to come in for physical therapy twice since March 2022, because she was "working as a caregiver and takes care of [her] granddaughter [five] days a week." Tr. 801. Accordingly, the ALJ's reliance on Plaintiff's noncompliance with treatment to reject Plaintiff's subjective symptom testimony regarding her physical impairments is supported by substantial evidence.

  **E. Objective Medical Evidence**

The ALJ rejected Plaintiff's subjective symptom testimony regarding both her physical and mental impairments due to a lack of corroborating objective medical evidence. Tr. 21-23.

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

PAGE 11 – OPINION AND ORDER

       1.      <u>Physical Impairments</u>.

The ALJ's analysis of the objective medical evidence regarding physical impairments includes an extensive summary of Plaintiff's treatment records and how they coincide with her cancer diagnosis, treatment, and remission. Tr. 21-23. The ALJ acknowledged that on March 10, 2021, Plaintiff was diagnosed with stage three cervical cancer "with malignant neoplasm of overlapping sites of the cervix[.]" Tr. 22. The ALJ discussed that Plaintiff underwent a radical hysterectomy on March 17, 2021, followed by radiation and chemotherapy treatments. *Id.* (citing Tr. 948). The ALJ explained that Plaintiff's cancer "did not exist for one year or more and appears to be resolved following treatment." *Id.* The ALJ further explained that Plaintiff's treatment was completed on June 29, 2021, and follow-up treatment notes demonstrate that Plaintiff was "doing well" overall and remained disease free for two years based on treatment notes from August 2023. *Id.* (citing Tr. 785, 948).

The ALJ reasoned that Plaintiff's allegation that she was unable to stand for more than ten minutes was inconsistent with imaging that showed only mild findings. *Id.* For example, the ALJ cited a computerized tomography scan performed on March 12, 2021, that found only mild facet degenerative changes in the lower lumbar spine. *Id.* (citing Tr. 424). The ALJ also relied on an x-ray from August 2023, that demonstrated that magnetic resonance imaging was not needed, and there were no neurological findings. *Id.* (citing Tr. 1001). These are clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony regarding her physical impairments.

       2.      <u>Mental Impairments</u>.

Regarding her mental health symptoms, the ALJ concluded that the objective medical evidence suggests that Plaintiff's anxiety and depression, although severe, is not disabling. The

PAGE 12 – OPINION AND ORDER

ALJ acknowledged Plaintiff's PHQ-9 and GAD-7 scores, her feelings of hopelessness, and how she often presented with a depressed mood on examination. *Id.* (citing 860, 982, 985, 1009). However, the ALJ reasoned that while these observations indicate Plaintiff's depression and anxiety are indeed severe, there are other observations where Plaintiff was found to have a "baseline" mental status, normal mood, and age[-]appropriate affect." *Id.* (citing Tr. 844, 848, 858).

Plaintiff argues that the treatment notes cited by the ALJ were taken out of context with regard to her mental health and were "superficially observed to be normal[,]" given that these treatment notes are from emergency department visits where Plaintiff sought treatment for a horse bite and an ankle injury that occurred when she stepped on a rock at a concert. Pl.'s Opening Br. 4-5 (citing Tr. 844, 848, 858). Plaintiff further argues that these isolated instances do not contradict the entire record of Plaintiff's consistent severe depression and anxiety. *Id.*

The ALJ erred by using these isolated incidents of "normal" mood and behavior to discredit Plaintiff's subjective symptom testimony regarding her mental impairments. The ALJ mischaracterized the record. The three citations the ALJ used to support the contention that Plaintiff had normal mood and baseline mental status were taken out of context given that Plaintiff was seeking treatment for ailments unrelated to her mental health. *See Reddick*, 157 F.3d at 722-23. (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Plaintiff exhibiting a normal mood on three occasions while seeking treatment for unrelated ailments is not substantial evidence that contradicts her testimony regarding the severity and frequency of her mental health impairments. *Silvia F. v. Saul*, 2019 WL 13071984, *6 (C.D. Cal. Aug. 16, 2019) (explaining how treatment notes for unrelated conditions are largely immaterial to

PAGE 13 – OPINION AND ORDER

conclusions made about a claimant's disabling impairments that are at issue). Furthermore, an ALJ may not simply rely on isolated instances of wellbeing to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan*, 246 F.3d at 1207 ("[T]he ALJ selectively relied on some entries in [the claimant's] records . . . and ignored the many others that indicated continued, severe impairment."); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (noting the cyclical nature of mental health diagnoses and instructing caution in drawing inferences based upon reports of improvements during treatment).

This error is harmful because the ALJ failed to provide at least one other valid reason for discrediting Plaintiff's mental health symptoms. Absent another reason provided by the ALJ to discount plaintiff's allegations surrounding her *mental* impairments, a lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Reddick*, 157 F.3d at 722.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony regarding her physical impairments. However, regarding her mental impairments, the ALJ erred by rejecting Plaintiff's subjective symptom testimony solely on the basis of a lack of corroborating objective medical evidence. Therefore, the ALJ's reasoning is inadequate as to Plaintiff's mental impairments, and the matter must be remanded for reconsideration. On remand, the ALJ must accept Plaintiff's testimony regarding her mental impairments or provide legally sufficient reasons for rejecting it.

**II.    Medical Opinion Evidence**

Plaintiff next argues that the ALJ improperly rejected Dr. Rice's medical opinion without providing legally adequate reasons for doing so. Pl.'s Opening Br. 8-10.

    A.    **Standard of review**

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

B.     Analysis

Dr. Rice completed a medical source statement on November 21, 2021. Tr. 749. Dr. Rice noted that she had seen Plaintiff several times a year since 2018. Tr. 749. She indicated that Plaintiff was diagnosed with cervical cancer, surgical menopause, and depression. *Id.* Dr. Rice opined that Plaintiff had to rest periodically throughout the day and would need unscheduled breaks due to the symptoms of her post-surgical menopause. Tr. 750-51. Dr. Rice opined that Plaintiff is limited to sitting for four hours per day and standing one hour per day. Tr. 751. Dr. Rice opined that Plaintiff cannot lift more than ten pounds. Tr. 753. She opined that Plaintiff would be off task for ten percent of the workday and absent from work three to four days per week due to her post-surgical diagnoses and symptoms. *Id.* Dr. Rice explained that the radiation and chemotherapy caused Plaintiff to experience an increased risk of infection, diarrhea, and pain. Tr. 751.

The ALJ found Dr. Rice's opinion unpersuasive Tr. 23. The ALJ stated "[t]here is nothing in the file to support an off-task or absence limitation, as stated by medical expert Dr. Goldstein at hearing." *Id.* The ALJ explained that Dr. Rice's opinion was given shortly after Plaintiff completed her cancer treatment and that subsequent medical evidence shows that Plaintiff's condition improved to the point that these opined limitations are not supported. *Id.*

(citing Tr. 785.) The ALJ also found that Plaintiff's "ability to concentrate appears only mildly impaired on mental status examinations." *Id.* (citing Tr. 764, 768, 859, 985.)

Plaintiff takes issue with the ALJ stating "[t]here is nothing in the file to support an off-task or absence limitation, as stated by medical expert Dr. Goldstein at hearing" and argues that this is a mischaracterization of what Dr. Goldstein stated at the hearing. Pl.'s Opening Br. (citing Tr. 23). Plaintiff explains that when the ALJ asked about Dr. Rice's opinion that Plaintiff would be off-task ten percent of the workday and absent three to four days per week, Dr. Goldstein responded "[t]hat may be true. But I certainly could not look at the medical record and independently figure that out." *Id.* (citing Tr. 46.) Plaintiff further argues that unlike Dr. Rice, Dr. Goldstein did not consider the post-operation effects of surgical menopause and that his opinion was based only on the written record given that "he had never seen [Plaintiff] and those effects as [Dr. Goldstein] admitted." *Id.* Plaintiff argues that Dr. Rice's opinion is consistent with the record as well as her clinical observations. To support this argument, Plaintiff cites medical records that indicate Plaintiff self-reported that she had trouble concentrating. *Id.* (citing Tr. 905, 907, 941, 997).

Plaintiff's arguments are not persuasive. First, Plaintiff's argument that Dr. Goldstein's opinion holds less weight because he never treated Plaintiff is not relevant to the current standard used for evaluating medical opinion evidence. The applicable regulations do not give deference to any medical opinion, whether they are treating or non-treating medical professionals. "According special deference" to treating or examining sources is not compatible with the new regulations. *Woods*, 32 F.4th at 789. "Now, an ALJ's decision including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 785.

PAGE 17 – OPINION AND ORDER

Second, Plaintiff does not adequately argue that Dr. Rice's opinion should have been found persuasive. Plaintiff simply cites three medical records where Plaintiff's "patient-reported data" indicated that she was experiencing difficulties in memory and concentration. Pl.'s Opening Br. at 10 (citing Tr. 905, 907, 941). Plaintiff also cites a medical source statement from her therapist, Lydia Clauson, LT where Ms. Clauson opined that Plaintiff's "depression makes carrying out instructions more challenging and that her anxiety may make [judgment] calls more challenging." Tr. 997. However, this medical source statement was given on September 12, 2023, and the ALJ determined that Plaintiff was disabled as of January 2, 2023. Tr. 26-27, 997. Additionally, the ALJ found Clauson's opinion generally not persuasive, and Plaintiff does not challenge the ALJ's analysis of Clauson's opinion. Tr. 24. Thus, Plaintiff fails to provide a sufficient argument as to why the ALJ failed to find Dr. Rice's opinion persuasive.

Last, Plaintiff fails to argue how the ALJ's error in characterizing Dr. Goldstein's statement is a harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (it is a claimant's burden to show harmful error). An error is "harmless" when it is "inconsequential to the ultimate nondisabiltiy determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations and quotations omitted). Plaintiff fails to develop an argument as to how this mischaracterization was consequential to the ultimate nondisability determination.

In sum, Plaintiff fails to demonstrate that the ALJ's analysis of Dr. Rice's opinion was not supported by substantial evidence.

**III.     Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. As relevant here, the Court may only remand for payment of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asks this Court "to order payment of benefits from the date of the alleged onset date of disability of March 10, 2021, through January 2, 2023, the date the ALJ found [Plaintiff] disabled." Pl.'s Opening Br. at 11. In her reply, Plaintiff asserts that "[t]here is no reason to send this back for another hearing" and that "the ALJ did not acknowledged that just because a patient's cancer disease is in remission, that does not translate into a magical overall cure for the after-effects of the disease." Pl.'s Reply Br. at 5. Plaintiff does not state the elements of the credit-as-true standard, nor does she engage in a detailed discussion of the how the credit-as-true standard is met. Thus, "Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate here." *Marshall M. v. Comm'r Soc. Sec. Admin.*, No. 3:23-CV-00039-SB, 2024 WL 2317386, at *9 (D. Or. May 22, 2024). Thus, this Court concludes there are

ambiguities in the record concerning Plaintiff's mental health limitations, and further proceedings would serve a useful purpose.

On remand, the ALJ must (1) accept Plaintiff's testimony regarding her mental impairments or provide legally sufficient reasons for rejecting them, (2) review any new evidence, and (3) as necessary, reweigh the medical and other evidence, reformulate Plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 7th day of January, 2026.

ANDREW HALLMAN
United States Magistrate Judge

PAGE 20 – OPINION AND ORDER